**Reversed and Remand and Opinion Filed June 1, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-21-00061-CR**
_____

**THE STATE OF TEXAS, Appellant**
**V.**
**JACKSON CONATSER, Appellee**

**On Appeal from the County Court at Law No. 1**
**Grayson County, Texas**
**Trial Court Cause No. 2020-1-0354**

## OPINION

Before Justices Myers, Partida-Kipness, and Pedersen, III
Opinion by Justice Pedersen, III

The State appeals the trial court's January 22, 2021 order granting appellee Jackson Conatser's Motion to Dismiss for Speedy Trial Violation. In a single issue, the State contends the trial court erroneously applied the *Barker v. Wingo* factors in determining that the State violated Conatser's right to a speedy trial. We reverse the trial court's order and remand this case for further proceedings.

## Background

Conatser was arrested for driving while intoxicated on August 29, 2018; he was released on bond the following day. Conatser's case was originally presented to the Grayson County District Attorney's office (the DA's Office) on September 18,

2018. At that time, the Sherman Police Department (the Department) requested that both alcohol and drug testing be performed. The alcohol analysis was completed by the Garland DPS Lab in December, and then the Department forwarded the blood sample to the Austin DPS Lab for drug testing. The DA's Office followed up with the Department in September 2019, and again in December 2019, but the Department had not received drug-test results from the Austin lab. On March 25, 2020, the Austin lab's test results were finally forwarded to the DA's Office. The Austin lab report was dated May 19, 2019. At the speedy trial hearing, the State represented that neither the Department nor the DA's Office had received the report until months after that May 2019 date.

On April 8, 2020, the State filed an information charging Conatser with driving while intoxicated. On August 18, 2020, the trial court sent notice of an arraignment hearing to be held September 10, 2020. Conatser retained counsel and filed his Waiver of Arraignment, Entry of Plea and Authorization of Attorney on September 9, 2020. On that same date, Conatser also filed his Motion to Dismiss for Speedy Trial Violation. The trial court heard the motion the following week and granted it on January 22, 2021.

This appeal followed.

**Right to Speedy Trial**

The Sixth Amendment to the U.S. Constitution guarantees the accused in a criminal prosecution the right to a speedy trial. *See* U.S. CONST. amend. VI. The

–2–

right to a speedy trial attaches once a person is either arrested or charged. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). Courts determine a speedy trial claim on an ad hoc basis by analyzing and weighing four factors: (1) the length of the delay, (2) the State's reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Cantu*, 253 S.W.3d at 280. The State has the burden to justify the length of the delay, while the defendant has the burden to prove he asserted his right and has been prejudiced. *Cantu*, 253 S.W.3d at 280.

We apply a bifurcated standard of review in a speedy trial analysis: we employ an abuse of discretion standard for the factual components and a de novo standard for the legal components. *State v. Lopez*, 631 S.W.3d 107, 113–14 (Tex. Crim. App. 2021). Thus, we give almost total deference to the trial court's historical findings of fact that are supported by the record. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). The balancing test of the *Barker* factors is a purely legal question that we review de novo. *Balderas v. State*, 517 S.W.3d 756, 767–68 (Tex. Crim. App. 2016).

### The Length of the Delay

To trigger a speedy trial analysis, the defendant must make an initial showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Gonzales,* 435 S.W.3d at 808

(quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)); *see also Barker*, 407 U.S. at 530–32 (holding that length of delay is "triggering mechanism" for analysis of other factors). Here, the State did not contest that the length of time from Conatser's arrest to his motion to dismiss—just over two years—was sufficient to trigger a full *Barker* analysis.[1] We agree that, in this case, the length of time without a trial setting merits our addressing the three remaining *Barker* factors.

### *Reason for the Delay*

We do not attribute equal weight to all reasons for delay:  an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts or negligence, is weighed less heavily against the State; and a valid reason is not weighed against the State at all. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999). Here the State offered distinct reasons for the two-part delay in proceeding to try Conatser.

The first and more significant part of that delay—from Conatser's arrest on August 29, 2018, until he was charged on April 8, 2020—was caused by the delay in receiving lab results from the Austin DPS Lab. The record contains no explanation

---

[1] We accept the State's concession that the delay was sufficient to trigger a full *Barker* analysis. However, we disapprove of the State's suggestion that a delay of eight months or more is presumptively prejudicial. We have recently stressed:  "There is no set or defined period of time that has been held to be a per se violation of a defendant's right to a speedy trial under the Sixth Amendment. . . .  Rather, alleged violations are considered on a case-by-case basis and each case is considered on its own merits." *State v. Page*, No. 05-18-01391-CR, 2020 WL 1899453, at *3 (Tex. App.—Dallas Apr. 17, 2020, no pet.) (mem. op., not designated for publication) (citations omitted). "[T]here is no constitutional basis for holding that an accused's speedy trial right can be 'quantified into a specified number of days or months.'" *Id.* at *5 (quoting *Haas v. State*, 498 S.W.2d 206, 211 (Tex. Crim. App. 1973)).

for why it took that lab from December 2019 until May 2020 to produce the test results, nor does it explain why—having determined the results of the drug testing—it took until March 25 of the following year to get those results to the arresting agency and the Grayson County District Attorney. This delay involving managing the State's resources is not unlike one caused by a backlog of cases or a shortage of staff; it weighs slightly against the State. *See id.*

The State blamed the second delay in bringing Conatser to trial—the period between filing of the charging instrument on April 8, 2020 through the filing of the defendant's motion to dismiss on September 9, 2020—on restrictions in court procedures during the Covid-19 outbreak. At the beginning of the speedy trial hearing, the trial court sua sponte took judicial notice of a number of facts including:

> because of the circumstances we have here in our state with the virus, there was not a hearing set for Mr. [Conatser's] arraignment until we sent out an arraignment notice on August the 18th of 2020, and Mr. Conatser filed a waiver of arraignment shortly before the arraignment was scheduled.

These months in 2020 were dominated by the unforeseeable initial impact of the Covid-19 pandemic. Conatser argues that "[t]he existence of a threat to public health does nothing to offset the interests of one accused of a crime" and contends that videoconferencing "became prevalent for the conduct of business well before September 2020." Of course conducting "business" and conducting jury trials are very different undertakings. Indeed, Conatser himself acknowledges that "even if [he] wanted a contested trial, the Covid-19 pandemic effectively demanded that in

order to get one he would have to waive his right to a jury trial, as no jury trials were occurring between April 8, 2020 and September 17, 2020." Delay caused by the onset of a pandemic cannot be attributed as fault to the State.

Finally, there is no evidence that the State deliberately delayed Conatser's trial for strategic gain. Therefore, we conclude the second *Barker* factor weighs only slightly against the State. *See Jackson v. State*, No. 05-14-00283-CR, 2015 WL 1540800 at *3 (Tex. App.—Dallas Apr. 1, 2015, no pet.) (mem. op., not designated for publication).

*Conatser's Assertion of His Right*

The third *Barker* factor examines the defendant's assertion of his right to a speedy trial. The State challenges one of the trial court's findings of fact related to this factor. Within its findings, the court stated that "[t]he defendant immediately asserted his right to a speedy trial." We defer to the trial court's findings of fact that are supported by the record. *Gonzales*, 435 S.W.3d at 808. But we find no support for this finding in the record. Conatser did not assert his right to a speedy trial "immediately" after his arrest or "immediately" after he was charged. In fact, he never requested a speedy trial, only dismissal of the charge against him. We cannot, therefore, defer to this finding.[2]

---

[2] If this "finding of fact" were determined to be a conclusion of law drawn by the trial court, our de novo review would likewise lead us to conclude that it is incorrect in terms of the authorities discussed herein.

Conatser's assertion of his right should receive "strong evidentiary weight" in our determination of whether he has been deprived of that right. *See Balderas*, 517 S.W.3d at 771. If a defendant does not timely demand a speedy trial, we must assume that he did not really want one. *Id.* And the longer the delay before trial, the more likely it would be that a defendant wanting a speedy trial would request it. *Id.*

In this case, Conatser first raised the issue of a speedy trial some five months after he was charged and two years after he was arrested. When he finally raised the issue, he did not request a speedy trial—he requested dismissal. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283. We conclude that Conatser's failure to assert his right to a speedy trial weighs against him.

*Prejudice to Conatser*

The fourth and final *Barker* factor we consider is the prejudice caused to the defendant as a result of the State's delay. The defendant has the burden of showing prejudice. *Id.* at 280. We assess this factor in light of the three interests the right to a speedy trial is intended to protect:  (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017).

Conatser testified at the hearing; his testimony is the only evidence in the record purporting to show prejudice. Conatser offered no testimony suggesting either that he was subject to oppressive pretrial incarceration or that his defense was in any way impaired by the delay. *See id.* He did testify that he experienced some amount of stress or anxiety. However, "evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 286.

Our review of the record indicates that, whether in response to questions from his own attorney or the prosecution, Conatser was unable to identify any significant prejudice:

- He testified he lost the job he had at the time of the DWI because the business dissolved; he'd had three jobs after that, but his difficulties were caused not by the DWI investigation but instead by "lack of a car mainly, and my health insurance." He was employed at the time of the hearing.

- He had no conditions attached to his bond. He testified that "[a]ll I have to do is call them every Monday at 9:00 in the morning and check in."

- He agreed that this case had caused him "considerable stress and anxiety over the last two years," although he acknowledged that he had been arrested before and thus presumably understood the level of stress normally associated with a criminal investigation. And as to the uncertainty of not knowing when

–8–

or how the case would be resolved, Conatser admitted that "[a]fter about two years, I just kind of—whenever they let me know, they will let me know."

- He testified that in April 2020 he "had a significant heart failure that led to a—a lung failure—respiratory failure," and he agreed that the stress of having this case pending "didn't help" that situation. But he did not testify that the delay in going to trial somehow caused his health issues, nor did he offer medical evidence of such a cause.

- At the time of trial, Conatser's driver's license had not been suspended.

We conclude that Conatser failed to identify any significant prejudice caused by the State's delay in bringing him to trial. This factor weighs heavily against him.

*Balancing the Factors*

We have determined that the length and reasons for the delay weigh slightly against the State. Conatser's failure to assert his right to a speedy trial weighs against him and in favor of the State. And finally, Conatser's failure to identify any significant prejudice incurred by delay weighs heavily against him. We conclude that Conatser has failed to carry his burden to establish both that he adequately asserted his right and that the State's delay caused him prejudice. We conclude that the *Barker* factors weigh against finding a speedy trial violation. The trial court erred, therefore, in granting Conatser's motion to dismiss. We sustain the State's single issue.

**Conclusion**

We reverse the trial court's January 22, 2021 order granting Conatser's Motion to Dismiss for Speedy Trial Violation. We remand this case for further proceedings.

/Bill Pedersen, III//

BILL PEDERSEN, III
JUSTICE

210061f.p05
Publish
TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-21-00061-CR      V.

JACKSON CONATSER, Appellee

On Appeal from the County Court at
Law No. 1, Grayson County, Texas
Trial Court Cause No. 2020-1-0354.
Opinion delivered by Justice
Pedersen, III. Justices Myers and
Partida-Kipness participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**REVERSED** and the cause **REMANDED** for further proceedings.

Judgment entered this 1st day of June, 2022.